JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1953 JGB (SHKx)** | Date | February 17, 2022 |
|---|---|---|---|
| Title | *Marcia Davis v. FCA US LLC* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order REMANDING Case to San Bernardino County Superior Court (IN CHAMBERS)

Before the Court is a Notice of Removal filed by Defendant FCA US LLC. ("Defendant" or "FCA"). ("Removing Defendant" or "FCA"). ("Removal Notice," Dkt. No. 1.) After considering the Removal Notice, the Court sua sponte REMANDS the case to the San Bernardino County Superior Court.

**I.   BACKGROUND**

On March 22, 2021, Plaintiff Marcia Davis ("Plaintiff" or "Ms. Davis") filed a Complaint in the Superior Court of the State of California for the County of San Bernardino against Defendants FCA US LLC ("FCA" or "Defendant") and Victorville Motors Chrysler Jeep Dodge Ram. ("Complaint," Dkt. No. 1-1.) The Complaint alleges six causes of action: (1) failure to comply with obligation to repair or pay restitution for a defective vehicle in violation of the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code § 1790 et seq.; (2) failure to commence service or repairs in violation of the Song-Beverly Act; (3) failure to supply replacement parts during the express warranty period in violation of the Song-Beverly Act; (4) breach of express warranty in violation of the Song-Beverly Act; (5) breach of the implied warranty of merchantability; and (6) fraud by omission. (Complaint.) On October 22, 2021, Ms. Davis dismissed Victorville Motors from the action. ("Removal," Dkt. No. 1, ¶ 2.)

On November 17, 2021, FCA removed to this Court and alleges diversity jurisdiction. (Removal.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014). The court must resolve doubts regarding removability in favor of remanding the case to state court. Id.

The district court may remand the case sua sponte or on the motion of a party. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.1988) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). Such questions must be addressed at the outset of a case: "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868). Thus, the Court must ordinarily address any jurisdiction questions first, before reaching the merits of a motion or case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998).

"Doubt arising from inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand." Charlin v. Allstate Ins. Co., 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998). Further, a court "must resolve all material ambiguities in state law in plaintiff's favor" on a motion to remand. Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). "When there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities. (Id. at 1118.)

## III.   DISCUSSION

FCA argues that the Court has diversity jurisdiction of this action because the amount in controversy exceeds $75,000, Plaintiff is a citizen of California, and FCA is not a citizen of California. ("Removal.") Diversity of citizenship is uncontested.

The Court finds that the amount in controversy is not facially evident. FCA argues the amount in controversy exceeds $75,000 based on (1) the price of Plaintiff's Dodge Avenger (the

"Vehicle") was $50,281.68 and thus represents Plaintiff's "actual damages," (2) the two-time civil penalty; and (3) attorney's fees, in which Plaintiffs' attorneys "regularly request more than $65,000." (Removal ¶¶ 31-34.)

However, the only monetary value pled is "damages in a sum to be to be proven at trial in an amount that is not less than $25,001.00" in the body of the Complaint. (Complaint ¶ 21.) Because the $25,001 amount "is not repeated in the Prayer for Relief," the Complaint "fails to allege a sufficiently specific total amount in controversy." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007). Further, "it is unclear whether all [the] damages are subsumed within the request for $25,001." Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (emphasis in original). Accordingly, the Court "must determine if [FCA] ha[s] shown by a preponderance of the evidence that the amount in controversy exceeds $75,000." Id.

**A. Actual Damages**

FCA contends that Plaintiff's actual damages are $50,281.68, the purchase price of the vehicle. (Removal ¶ 35.)

The Court disagrees. The vehicle purchase price can demonstrate actual damages under the Song-Beverly Act, particularly when a plaintiff seeks recovery of "the entire contract price." Schneider, 441 F. Supp. 3d at 914–15; see also Luna v. FCA US LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) ("Courts routinely find that an undisputed Retail Installment Sales Contract [("RISC")]can establish actual damages."). However, because the Song-Beverly Act provides that "the actual price paid or payable by the buyer includes any finance charges," courts, including this one, have found the total cash price a more appropriate measure of actual damages. See Alvarado v. FCA US, LLC, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (applying "the total cash price paid for the subject vehicle"); Luna, 2021 WL 4893567, at *7 (concluding that "it is more appropriate to use the total cash price listed in the [contract]" when "the Court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle"). Accordingly, the Court uses the total cash price in the RISC of $29,582.68 as the initial amount for the calculation of actual damages. ("RISC," Dkt. No. 3, Ex. B.)

FCA fails to provide a mileage offset amount in its Removal Notice. Under the Song-Beverly Act, any restitution "must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles." Alvarado, 2017 WL 2495495, at *4; Cal. Civ. Code § 1793.2(d)(2)(C). Cal. Civ. Code section 1793.2.(d)(2)(C) provides that FCA must identify the first repair **attempt** "for correction of the **problem that gave rise to the nonconformity**." Cal. Civ. Code §1793.2(d)(2)(C).

The RISC lists the odometer reading as 49 miles at the time of purchase. (RISC.) FCA does not include a repair order history in the Removal. The Complaint, however, alleges a history of the Vehicle's repairs. (See Complaint.)

Plaintiff alleges that the Vehicle developed various defects, including but not limited to "defects related to the powertrain system, including the engine, and/or transmission; defects related to the electrical system, and other defects." (Id. ¶ 10.) On December 12, 2014, Plaintiff presented the Vehicle to an authorized repair facility, where the Vehicle was allegedly repaired for the first time. (Id. ¶ 12.) ("Defendant's technician performed Recalls W95 (updated powertrain control module[ )]…"). The RISC lists the odometer reading as 49,545 miles at the time of the repair. (Id.)

Cal. Civ. Code section 1793.2(d)(2)(C) provides a formula to calculate the mileage offset:

$$\frac{N}{120,000} \times cash\ price$$

(N = number of miles driven before first repair related to the alleged noncomformity)

Cal. Civ. Code § 1793.2(d)(2)(C).

$$\frac{49,545}{120,000} \times 29,582.68$$

The above calculation generates an offset of $12,213.95. The actual damages amount ($29,582.68 minus $12,213.95) equals $17,368.73.

## B. Civil Penalties

The Song-Beverly Act provides that a civil penalty of two times the amount of actual damages is available pursuant to Sections 1794(c) and 1794(e) of the California Civil Code. Generally, "[c]ourts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff." Saulic v. Symantec Corp., 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007). However, when a defendant "fail[s] to establish the amount of damages at issue," then "the Court cannot determine the amount of any potential civil penalty." Edwards v. Ford Motor Co., 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016). Two-times the actual damages amount is $34,737.46, plus the actual damages amount of $17,368.73, equals a total of $52,105.63. This amount does not meet the jurisdictional threshold of $75,000.

C. **Attorney Fees**

Finally, FCA argues that Plaintiff's request for attorneys' fees should be included in the amount in controversy calculation and alleges that Plaintiffs' attorneys regularly request more than $65,000 in fees. (Removal ¶ 12.)

"Section 1332(a)'s amount-in-controversy requirement … includes attorneys' fees." Guglielmino, 506 F.3d at 700; Galt G/S. v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998). "The removing defendant, however, must use 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000." Schneider, 441 F. Supp. 3d at 914.

In Schneider, the court found insufficient the defendant's submission of a single declaration that "claims for attorneys' fees in these cases regularly approaches or exceeds $50,000." Id. Evidence of a recent fee award granted to the plaintiff's counsel was also inadequate. The defendants' claim "that the same counsel appears in each case and that the subject-matter of the cases are the same" failed "to provide the Court with specific evidence showing that the attorneys' fees in this case are 'more likely than not' to exceed $75,000." Id. (emphasis in original).

For support, FCA merely points to a list of cases where Plaintiffs' attorneys requested large fees without explanation as to how those cases are analogous to the instant case. (Id.) The Declaration of Matthew M. Proudfoot alleges the following as to attorneys' fees: "Plaintiff's attorneys in Song Beverly cases tried or prepared for trial regularly request more than $65,000 in fees." ("Proudfoot Decl.," Dkt. 3, ¶ 8.) Schneider deemed this kind of declaration insufficient. Fees which flow from a trial are not analogous to the instant case, and therefore are not persuasive to this Court. FCA provides no specific evidence of the attorneys' fees in this case. Accordingly, the Court concludes that attorneys' fees cannot be used to satisfy the amount in controversy requirement.

In sum, FCA fails to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. This Court lacks subject matter jurisdiction over the Complaint.

## IV.   CONCLUSION

For the reasons above, the Court **REMANDS** to the Superior Court of the State of California for the County of San Bernardino.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**